IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

AMBROSE BERNARD WILLIAMS                                              PLAINTIFF

                    v.                      Civil No.  14-5077

NURSE DARLA WATSON;
and DEPUTY FREEMAN                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*

At the time he filed this action, Plaintiff was incarcerated in the Benton County Detention

Center (BCDC).  He names as Defendants Nurse Darla Watson and Deputy Freeman.  Plaintiff

has sued the Defendants in both their individual and official capacities.  Plaintiff alleges the

Defendants exhibited deliberate indifference to his serious medical needs.

Deputy Freeman no longer works for Benton County.  Service was returned as

unexecuted (Doc. 9).  By order entered on May 7, 2014 (Doc. 13), Plaintiff was directed to

provide the Court with an address for service. Plaintiff was unable to locate an address, but

defense counsel provided Deputy Freeman's last known address.  Service was again directed on

March 24, 2015 (Doc. 28).  The summons was again returned unexecuted (Doc. 30).  No other

address is available to the Court.

Defendant Darla Watson has filed a motion for summary judgment (Doc. 34).  A hearing

was held on April 27, 2016, to allow the Plaintiff to testify in response to the motion.  Nurse

-1-

Watson was allowed to testify by telephone.  The testimony of Dr. Lafferty was taken telephonically on April 28, 2016.  The motion is ready for decision.

### 1.  Procedural History

This case was originally scheduled for a hearing on the summary judgment motion on February 17, 2016.  However, in reviewing the case prior to the hearing, the undersigned noted that Nurse Watson's summary judgment materials indicated she was not working on the night in question, October 22, 2013, and that it was Nurse Gail Hartgraves who worked that evening. For this reason, the hearing was postponed, and a telephone conference call was held on February 16, 2016, to ascertain whether Plaintiff wanted to file an amended complaint or otherwise move to substitute Nurse Hartgraves in the place of Nurse Watson.

Plaintiff was insistent that the nurse involved was Nurse Watson.  He maintained she was the only nurse there on the evening of October 22, 2013.  Since he had been at the facility in excess of ten months, he insisted he knew which nurse he dealt with.

In view of the apparent disagreement as to which nurse was working on the evening of October 22, 2013, the undersigned directed that the matter be rescheduled for hearing and that subpoenas be issued for Dr. Lafferty and for Nurse Hartgraves.

### 2.  Background

### (A).  Plaintiff's Version of the Events

Plaintiff testified that he was incarcerated at the BCDC from October 7, 2013, until his release in November of 2014.  *Defts' Ex.* A-1 at 1.[1]  At the times relevant to this case, Plaintiff was in pretrial status.

---

[1]Page citations to this exhibit are to the jail file page located at the bottom center of the page.

Plaintiff testified that shortly after he was through eating breakfast on the morning of October 22, 2013,[2] he began to experience a burning sensation and pain in his abdomen. He had never had this feeling before. Plaintiff submitted a medical request/grievance on the kiosk, stating that he had a burning sensation in his stomach and needed to see the doctor. He testified, however, that there was some type of malfunction with the kiosk that day and the grievances for the whole pod were missing for that day. Thirty to forty-five minutes later, he pushed the emergency button.

Plaintiff testified in his deposition that he had taken a nap after breakfast and that when he woke up around 10:00 or 11:00 a.m., he was feeling bad. *Defts' Ex.* B at 6-7. This is when he submitted the medical request and, when that was not answered, he started pushing the emergency button. *Id.*

Deputy Freeman responded to the emergency button and denied the Plaintiff's request to be seen by the nurse. According to Plaintiff, Deputy Freeman refused his request to see a nurse "four times." *Defts' Ex.* A-1 at 108 & 137. Deputy Freeman just told Plaintiff to lie back down, that he would be all right, and to stop pressing the emergency button. *Defts' Ex.* B at 3,[3] 4. Plaintiff felt that Deputy Freeman should have at least come into the pod to see what was wrong. *Id.* at 32.

---

[2]Plaintiff actually testified the date was October 21, 2013. However, the hospital records establish the day in question was October 22, 2013.

[3]This exhibit is the Plaintiff's deposition. Page citations are to the deposition page number and not the CM/ECF page number.

Plaintiff then asked another inmate to press the emergency button and say that something was wrong with the Plaintiff. *Id.* at 4. Plaintiff indicated that after this, the door was finally opened and he was taken down to the nurses' station. *Id.*

Plaintiff testified that it was around 4:00 to 4:30 p.m., when he was finally taken to the nurses' station. He walked to the nurses' station but was in severe pain. Plaintiff testified he saw Nurse Watson and told her about the burning sensation in his stomach. He described it as being in the middle of his abdomen. Nurse Watson had him lay down and pressed on his abdomen. Plaintiff testified she offered him Ibuprofen and Pepto-Bismol. Plaintiff testified that the Ibuprofen did not help with the pain.

Plaintiff testified that around dinner time he thought he should try to eat something. As he sat, he fell to the floor. Inmates witnessed his fall and summoned help. Plaintiff believed this occurred at about 5:30 to 5:45 p.m. Plaintiff was taken to the nurses' station a second time and seen by Nurse Watson. This time, he was taken in a wheelchair.

Plaintiff testified he told Nurse Watson he was in pain. Plaintiff indicated he did not take Ibuprofen or Pepto-Bismol. Nurse Watson said she would call Dr. Lafferty to see if Plaintiff should be taken to the hospital. Plaintiff testified that he could not walk anymore. He was sent back to his cell, but a deputy stayed in the cell with him.

Plaintiff testified that about 15 to 20 minutes later, he was told he was going to be taken to booking and that transport was on its way to take him to the hospital. Plaintiff was put in a wheelchair, handcuffed to it, and taken to booking, where he waited for two to three hours before being taken to the hospital by a squad car. During this period of time, the nurse did not check on Plaintiff.

-4-

The Mercy Hospital Northwest records indicate that Plaintiff arrived at the emergency room at 7:39 p.m. on October 22, 2013. *Defts' Ex.* D at 2. Plaintiff testified that he sat in the hospital waiting room until 10:30 or 11:00 p.m. However, hospital records indicate that at 10:23 p.m., Plaintiff had an abdominal CT scan, which resulted in a diagnosis of acute appendicitis without mention of peritonitis.[4] *Id.* at 2 & 12. Plaintiff underwent a laparoscopic appendectomy on October 23, 2013, at 5:38 a.m. *Id.* at 56. His appendix was acutely inflamed but there was no evidence of rupture. *Id.* at 19. Plaintiff was discharged on October 23, 2013, at 5:44 p.m. *Defts' Ex.* D at 23 & 56. He was given a prescription for hydrocodone-acetaminophen, one tablet to be taken every four hours as needed for pain. *Id.* at 133.

Plaintiff testified that when he returned to the BCDC, he was put in the medical unit, on the top level. Plaintiff informed Nurse Watson and the guard on duty that the doctor had said he should not walk steps. According to Plaintiff, the guard responded that it was up to the nurse and not the doctor at the hospital.

Plaintiff testified he told Nurse Watson there was no reason for him to be in the top level when the doctor said "no steps." He said he still had gasses in his stomach. He testified that Nurse Watson said that it was not her concern. Plaintiff stated that he stayed in the medical unit for four days, on the top level the whole time. Plaintiff testified he did not file a grievance about this but did talk to the sergeants who said it was up to Nurse Watson.

The pain lasted for three to four days. *Defts' Ex.* B at 25. Jail records indicate Plaintiff received the prescribed narcotic pain medication. *Defts' Ex.* A-1 at 20-21. Plaintiff testified that

---

[4]"Peritonitis is inflammation of the peritoneum--a silk-like membrane that lines your inner abdominal wall and covers the organs within your abdomen--that is usually due to a bacterial or fungal infection." http://www.mayoclinic.org/diseases-conditions/peritonitis/basics/definition/con-20032165 (accessed July 26, 2016).

AO72A
(Rev. 8/82)

he did not submit any medical requests during this time because he had the opportunity to talk to Nurse Watson, as she was right there in the medical unit.   Plaintiff was taken to the hospital for a follow-up appointment on the following Monday.

Plaintiff testified that Nurse Watson exhibited deliberate indifference in the following ways: (1) by offering him the wrong medication, Ibuprofen and Pepto-Bismol, for a burning sensation in his stomach;  (2) by delaying sending him to the hospital; (3) by failing to recognize the signs and symptoms of appendicitis; and (4) by requiring him to walk stairs, despite the doctor having told him he should not go up and down stairs.

### (B).  Defendant's Version of the Events

Nurse Gail Hartgraves testified that in October of 2013, she was employed as a registered nurse at the BCDC.  Although she does not specifically recall her interactions with the Plaintiff on October 22, 2013, she testified that she wrote the notes in his medical chart.  According to her notes, the Plaintiff was first brought to the nurses' station at 5:55 p.m. *Defts' Ex.* A-1 at 47. Plaintiff complained of lower left quadrant pain, supra-pubic pain, numbness in his face, and a pounding headache since lunch.  *Id.*  Nurse Hartgraves testified that she performed a physical examination and when she pressed on Plaintiff's abdomen, he did not exhibit guarding.  *Id.*  He had protein in his urine, which indicated to her that he might have a urinary tract infection, and his pulse was high.  *Id.*  Nurse Hartgraves decided to call Dr. Lafferty to see if he believed the Plaintiff should be sent to the hospital.

At 6:20 p.m., Plaintiff felt a little better, so Nurse Hartgraves sent him back to the pod to await the doctor's orders.  *Defts' Ex.* A-1 at 47.  At 6:25 p.m., Nurse Hartgraves noted that the doctor had determined the Plaintiff should go to the hospital via transport.  *Id.* at 51.  Nurse

-6-

Hartgraves testified "via transport" meant that an officer would transport him to the hospital rather than calling for an ambulance. *Id.* Nurse Hartgraves let Sergeant Lara know about the doctor's orders. *Id.*

Nurse Hartgraves could not recall offering the Plaintiff Ibuprofen or Pepto-Bismol. She did not know how long it took for him to be transported because she did not go to booking with the Plaintiff.

Nurse Watson testified that while Nurse Hartgraves had sent her a text message on October 22, 2013, informing her that Plaintiff had been sent to the hospital, she was not at work that evening, and she was not "involved in any way in Plaintiff's evaluation, care, or in the decision to take him to the hospital on October 22, 2013." *Defts' Ex.* C at ¶ 5. Nurse Watson testified that she first met Plaintiff when he came to doctor call on October 24, 2013.      Dr. Lafferty testified that in October of 2013, he was the physician for the BCDC. He did not recall the October 22, 2013, incident in detail, although he did recall being contacted about an inmate with abdominal pain. Dr. Lafferty testified that based on his review of the records, he was contacted by Nurse Hartgraves, who reported the inmate had left lower quadrant pain, a headache, no rebound, slightly elevated heartbeat and blood pressure, and protein in his urine, which was indicative of a urinary tract infection. Dr. Lafferty noted the handwriting on Plaintiff's medical records for October 22, was that of Nurse Hartgraves. He testified it was also her handwriting on the physician's orders, and that she did the urine analysis.

Dr. Lafferty testified that he ordered the Plaintiff sent to the emergency room to make sure it was nothing more serious. Dr. Lafferty did this primarily because of the Plaintiff's complaints of significant pain. Dr. Lafferty testified that many things can cause abdominal pain.

-7-

He explained that appendix pain typically starts around the belly button and migrates to the right lower quadrant.  Dr. Lafferty testified that he directed Plaintiff to be taken by deputy transport because nothing indicated Plaintiff's life was in jeopardy.  He noted that most people with appendicitis arrive at the hospital by car.  In Dr. Lafferty's opinion, the delay in transporting Plaintiff to the hospital did not impact his condition, and the surgery was fairly routine.

### 3.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor."  National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

-8-

**4. Discussion**

Nurse Watson has moved for summary judgment on the following grounds: (1) she was not personally involved in Plaintiff's care on October 22, 2013; (2) she was not deliberately indifferent to Plaintiff's medical needs; and (3) there is no basis for official capacity liability.

**(A). Individual Capacity Claim**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that she violated a right secured by the Constitution. West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). To prevail on a denial of medical care claim, the Plaintiff must show: (1) the existence of an objectively serious medical need, and (2) that Defendants knew of and deliberately disregarded that need. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009). Defendants' mental state must be akin to criminal recklessness. Id. This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (constitutional violation cannot rest on mere disagreement with treatment decisions); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (inmates have no constitutional right to particular course of treatment, and doctors are free to use their own medical judgment); Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent where they treated the prisoner and offered

-9-

sensible medication).  Similarly, "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference."  Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted).

To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  Id. at 1066 (internal quotation marks and citation omitted).

If Nurse Watson was not on duty on October 22, 2013, she clearly cannot be held liable to the Plaintiff in her individual capacity.  Individual liability under § 1983 "is personal, so each defendant's conduct must be independently assessed."  Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010).  However, for summary judgment purposes, the undersigned must accept as true Plaintiff's testimony that Nurse Watson was the nurse on duty.

Turning to an examination of the Plaintiff's claims against Nurse Watson stemming from the events of October 22, 2013, as testified to by the Plaintiff: he was first seen by Nurse Watson at 4:00 or 4:30 p.m., at which time she offered him only Ibuprofen and Pepto-Bismol; he next saw her at 5:30 to 5:45 p.m., when he was taken to the nurses' station for a second time, at which time she said she would contact the doctor; fifteen to twenty minutes later he was told he was going to booking so he could be transported to the hospital; and Nurse Watson failed to check on him while he waited in booking for transportation.  Hospital records indicate Plaintiff arrived at the emergency room at 7:39 p.m.

Plaintiff appears to believe that Nurse Watson should have immediately recognized that he was suffering from appendicitis.   The common signs and symptoms of appendicitis may include: sudden pain that begins on the right side of the lower abdomen; sudden pain that begins

-10-

around your navel and often shifts to your lower right abdomen; pain that worsens if you cough, walk or make other jarring movements; nausea and vomiting; loss of appetite; low-grade fever that may worsen as the illness progresses; constipation or diarrhea; and abdominal bloating.[5] Plaintiff presented with few of these symptoms, and his pain was in the left lower quadrant, which would not tend to immediately make a person think of appendicitis.

When Plaintiff's pain worsened, Nurse Watson contacted the doctor and arrangements were made for the Plaintiff to be transported to the hospital.  It was Dr. Lafferty, and not Nurse Watson, who determined Plaintiff's condition was not serious enough to merit an ambulance. There is no indication in the summary judgment record that the nurse was contacted once the Plaintiff was in booking to re-check the Plaintiff or to advise her that transportation was not immediately available.  Under these circumstances, there are no genuine issues of material fact as to whether Nurse Watson exhibited deliberate indifference to the Plaintiff's serious medical needs on the evening of October 22, 2013.

Moreover, where an inmate alleges a delay in medical treatment, "the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation marks and citation omitted).  "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of [the] delay." Martinson v. Leason, 22 F. Supp. 3d 952, 965 (D. Minn. 2014) (internal quotation marks and citation omitted).

---

[5]http://www.mayoclinic.org/diseases-conditions/appendicitis/basics/symptoms/con-20023582 (accessed July 27, 2016).

-11-

Here, the summary judgment record contains no such verifying medical evidence. In fact, the hospital records clearly indicate that the Plaintiff's appendix had not burst. The delay therefore did effect his prognosis or recovery.

The remaining question is whether Nurse Watson was deliberately indifferent to Plaintiff's serious medical needs when she housed the Plaintiff on the top level of the medical pod, which resulted in his having to go up and down stairs.

I do not believe there are any genuine issues of material fact as to whether Nurse Watson exhibited deliberate indifference to Plaintiff's serious medical needs when she housed him on the top tier of the medical pod. At most, this amounts to a disagreement as to the proper course of treatment. This is insufficient to state a claim of deliberate indifference to serious medical needs.

### (B). Official Liability

An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim is treated as a claim against Benton County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted). A "custom involves a pattern of persistent and

-12-

widespread . . . practices which become so permanent and well settled as to have the effect and force of law." Id.

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted). Here, Plaintiff makes no such showing. In fact, he testified that no policy of the detention center was at issue. There is no basis on which Benton County may be held liable.

### 5. Conclusion

For the reasons stated, I recommend that the motion for summary judgment (Doc. 34) be **GRANTED and the claims against Nurse Watson be DISMISSED WITH PREJUDICE.** I further recommend that the claims against Deputy Freeman be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m), as Deputy Freeman has not been located and served with process.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

-13-

DATED this 29th day of July 2016.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)